UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
IN ADMIRALTY

-------------------------------------------------------------------x

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT, | Civil Action No.: |
| -of- | |
| JERSEY JET SKI, INC., AS OWNER OF TWO BOMBARDIER SEA DOO JET SKIS FOR EXONERATION OF LIMITATION OF LIABILITY | **COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY** |

-------------------------------------------------------------------x

### COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY

Jersey Jet Ski, Inc., as owner of two Bombardier Sea Doo jet skis (hereinafter referred to as "Petitioner"), by and through its attorney, Cipriani and Werner, PC, as and for its Complaint for Exoneration from or Limitation of Liability, alleges upon information and belief, as follows:

### JURISDICTION AND VENUE

1. This is a proceeding for Exoneration from or Limitation of Liability pursuant to 46 U.S.C. §§ 30501, et. seq., involving Admiralty and Maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure (hereinafter referred to as the "Limitation Action").

2. This Court has admiralty and maritime jurisdiction over this proceeding pursuant to Article III, Section 2 of the United States Constitution USC, as well as 28 U.S.C. § 1333, because the alleged incident involved two vessels operating upon the navigable waters of the United States, more specifically in or about the waters of Morris Canal in Jersey City, Hudson County, New Jersey.

3. Venue in this district is proper because all of the events giving rise to this action took place in Jersey City, Hudson County, New Jersey. The current location of one of the Bombardier Sea Doo jet skis involved in this incident is known to be in Jersey City, New Jersey, and upon information and belief, the second Bombardier Sea Doo jet ski involved in this incident is in route from Florida to Jersey City, New Jersey. It is anticipated that both Bombardier Sea Doo jet skis will be located within the confines of the District of New Jersey for venue purposes.

## THE PARTIES

4. Petitioner at all relevant times was and now is an entity incorporated in the State of New Jersey.

5. Petitioner was at all relevant times the owner of two 2023 Bombardier Sea Doo GTX 130 Pro jet skis (the "Vessels 1 and 2").

## FACTUAL BACKGROUND

6. On September 17, 2024, the Vessels were being operated on navigable waters of the United States, in or around the Morris Canal in Jersey City, Hudson County, New Jersey.

7. The Vessels were engaged in a guided tour on navigable waters at the time of the incident. At the time, a tour guide was leading a line of Vessels with Saed Khaled Ahmad Almomani operating Vessel 1 behind the tour guide, and Joel Vivaco Pesantez operating Vessel 2 behind Almomani.

8. All necessary safety precautions were being taken by the tour guide and both referenced Vessel operators had also been provided with instructions in safe boating covering the United States Coast Guard Navigation Rules, safety rules of operation of personal watercraft, equipment requirements for the applicable vessels, and both vessel operators had signed a Participation Agreement, Release and Assumption of Risk Agreement.

9. Just prior to the incident occurring, Saed Almomani was operating Vessel 1 and Joel Vivaco Pesantez was operating Vessel 2, both traveling in an eastbound direction on the Morris Canal in Jersey City, New Jersey. The operator of Vessel 1 failed to navigate Vessel 1 safely, changing direction in front of Vessel 2, immediately resulting in Vessel 2 striking Vessel 1 in the mid-ship area.

10. On December 10, 2024, Jersey Jet Ski, Inc., received a letter of representation from an attorney for Saed Almomani claiming that he was injured due to the alleged negligence of Jersey Jet Ski, Inc. Said letter was dated December 10, 2024, and received several days after that date by Jersey Jet Ski, Inc. Said letter was the first notice of an alleged claim of injury from an incident that occurred on September 17, 2024. (See Notice Letter annexed as **Exhibit "A"**)

## RELIEF SOUGHT

11. Any claim for loss, damage, and/or injury arising from the alleged incident was not due to any fault, negligence, or want of care on the part of Petitioner.

12. Any claim for loss, damage, and/or injury arising from the alleged incident was solely caused by the actions and/or negligence of the potential claimant, Saed Almomani, and/or Joel Vivaco Pesantez, both for whom Petitioner is not responsible.

13. If any fault on the part of Petitioner caused or contributed to the claim for loss, damage, and/or injury arising from the alleged incident, which is denied, such fault, neglect, or want of care was occasioned and occurred without Petitioner's privity or knowledge. Petitioner acted reasonably under the circumstances.

14. The value of each 2023 Bombardier Sea-Doo GTX 130 Pro, each with approximately 200 hours is $9000.00 for a total value of $18,000. (See Affidavit of Value annexed as **Exhibit "B"**)

3

15. Petitioner through its insurance carrier, Prime Insurance Company offers to post a bond for value totaling the amount of $18,000 plus costs and interest , said amount being not less than Petitioner's interest in the value of the Vessel's on the date of the alleged incident, for payment/deposit with the Court whenever the same shall be ordered, as provided for by the aforesaid statute, and by Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, and by the rules and practices of this Court.

16. The nature of Saed Almomani's claim for alleged personal injuries has a value that may exceed the value of Petitioner's interest in the Vessel's on the date of the alleged incident.

17. The Petitioner commenced this proceeding within 6 months of receiving first written notice of Saed Almomani's claim, which was dispatched by Saed Almomani's attorneys on or about December 10, 2024, as noted above.

18. Petitioner is entitled to exoneration from liability for claims arising from the aforementioned alleged incident, and from any and all claims that have been or may be hereafter made.

19. Petitioner claims in the alternative, the benefit of limitation of liability to the value of the Vessel's provided by 46 U.S.D. Section 30501 et. Seq., and the various statutes supplementary thereto and amendatory thereof.

**WHEREFORE,** Petitioner hereby demands:

(1) That this Honorable Court issue an Order to include the following:

(a) Directing the issuance of Notice to all persons, firms, entities, or corporations asserting claims with respect to the September 17, 2024

incident, which this Complaint seeks Exoneration from or Limitation of Liability , to file their respective claims with the Clerk of this Court and to serve the undersigned a copy hereof on or before the date to be named in the Notice:

(b)  Directing Petitioner to file a bond as security for the benefit of any and all claimants, in the amount of Petitioner's interest in the value of the vessels as of the date of the alleged incident plus costs and interest, whenever the Court shall so Order;

(c)  Enjoining the prosecution of any and all proceedings already begun arising out of the Vessel's voyages, including any proceedings arising out of the September 17, 2024 incident herein, and enjoining the commencement hereafter of any suits or proceedings of any nature against Petitioner, its agents, representatives, and insurers, or against the Vessel's, in any respect of any claim arising out of the aforesaid voyages and casualty, except in this proceeding;

(2)  That this Honorable Court adjudge that Petitioner is not liable for any claims or loss, damage, and /or injury arising out of the September 17, 2024 alleged incident, and is therefore entitled to exoneration from liability;

(3)  If Petitioner is adjudged liable, that such liability be limited to Petitioner's interest in the value of the Vessel's as of the date of the alleged incident, in the maximum amount of $18,000, and that Petitioner be discharged therefrom upon the surrender of such interest, and that the money surrendered, paid, or secured as aforesaid, be divided pro rata according to the above mentioned statutes among

such claimant(s) as may duly prove his/her claim saving to all parties any priorities to which they may be legally entitled, and that a decree may be entered discharging Petitioner from any and all further liability;

(4)   That Petitioner may have such other and further relief as justice may require.

                                      Respectfully submitted,

                                      **CIPRIANI & WERNER, P.C.**

                    By:    <u>Robert F. Ball</u>
                             Robert F. Ball, Esq.
                             Attorneys for Petitioner:

Dated: June 5, 2025

# EXHIBIT A

**MORGAN & MORGAN**

December 10, 2024

**PLEASE BE ADVISED THAT THIS LETTER CONTAINS A TIME SENSITIVE SETTLEMENT OFFER. ALL SECTIONS OF THIS PACKAGE ARE SUBMITTED FOR THE PURPOSE OF SETTLEMENT ONLY. PLEASE GIVE THIS LETTER YOUR IMMEDIATE ATTENTION.**

**VIA EMAIL: Zakz@primeis.com**
**Prime Insurance Company**
**BI Claims Department**
**8722 S. Harrison Street**
**Sandy, UT 84070**

RE:　　Our Client:　　Saed Almomani
　　　　Your Insured:　Jersey Jet Ski Inc
　　　　Date of Loss:　09/17/2024
　　　　Claim #:　　　SC240609750014

To Whom It May Concern:

Please be advised that this law firm has been retained to represent **Saed Khaled Ahmed Almomani** as a result of injuries he sustained in the above-referenced crash.

**DATE OF CRASH:** September 17, 2024

**AGE, SEX:** 23-year-old-male

**CAUSE OF INJURY:**

On September 17, 2024, at approximately 5:28 PM, our client **Saed Khaled Ahmed Almomani**, was the operator of a Bombardier Sea Doo Jet Ski, owned by Defendant Jersey Jet Ski, which was traveling on Morris Canal, at or near Tower at Liberty State Park, in the County of Hudson, and State of New Jersey. Defendant, Joel Vivanco Pesantez was the operator of a Bombardier Sea Doo Jet Ski, owned by Defendant Jersey Jet Ski, that was traveling behind the Plaintiff on Morris Canal, at or near Tower at Liberty State Park, in the County of Hudson, and State of New Jersey. Your insured Jersey Jet Ski Inc allowed Defendant, Joel Vivanco Pesantez to suddenly, without signal or warning, violently, negligently, and recklessly strike **Saed Khaled Ahmed Almomani**. Due to the crash and negligence of your insured, **Saed Khaled Ahmed Almomani** has suffered permanent and severe injuries.

**LIABILITY:** CLEAR.

It is our position that liability is clear and that the only issue to be negotiated in this case is the value of the bodily injury claim.

Defendant, Jersey Jet Ski, was negligent in failing to ensure that Defendant, Joel Vivanco Pesantez, was adequately trained, supervised, and capable of safely operating a Jet Ski prior to participating in the guided tour. Defendant, Jersey Jet Ski, failed to implement and enforce adequate safety protocols, including but not limited to, providing comprehensive safety briefings to all participants, ensuring that all operators held valid Boating Safety Certificates, and conducting proper evaluations of participants' ability to safely operate personal watercraft. Furthermore, Defendant, Jersey Jet Ski, failed to maintain a safe and controlled environment during the tour, neglected to provide sufficient oversight of the tour participants, and failed to adopt policies and procedures designed to prevent collisions and other hazards.

Additionally, Defendant, Jersey Jet Ski, breached its duties by reason of the following separate and cumulative acts and omissions:

1. Negligently creating hazards to members of the public, including Plaintiff, by failing to implement proper safety measures and procedures for their Jet Ski tour operations, thereby creating an unreasonably dangerous condition;

2. Negligently failing to provide adequate and comprehensive training to tour participants, including Plaintiff, prior to the commencement of Jet Ski operations, which resulted in participants being unable to operate Jet Skis safely and avoid foreseeable risks;

3. Negligently failing to adequately train their staff, including tour guides and other employees, in the proper operation and supervision of Jet Ski vehicles, as well as in the implementation of safety protocols designed to prevent collisions and injuries;

4. Negligently failing to supervise both their staff and tour participants, including Defendant Joel Vivanco Pesantez, before and during the Jet Ski tour to ensure compliance with safety standards and proper operation of the Jet Skis;

5. Negligently failing to inspect and maintain the Jet Skis in a safe and operable condition, resulting in equipment that posed a risk to participants, including Plaintiff;

6. Negligently failing to provide appropriate safety equipment or ensure that all participants, including Plaintiff, were wearing and properly utilizing such equipment during the tour;

7. Negligently failing to provide or enforce adequate safety instructions and warnings to participants, including Plaintiff, regarding the risks associated with Jet Ski operations, despite knowing or having reason to know that such operations posed a significant risk of harm to inexperienced users;

8. Negligently failing to warn or adequately warn Plaintiff of the risks associated with the specific conditions and hazards present during the Jet Ski tour, including the actions of other

      participants, such as Defendant Joel Vivanco Pesantez, who operated his Jet Ski in a reckless and unsafe manner; and

9. Negligently failing to establish and enforce rules, procedures, and safeguards designed to prevent collisions and injuries during guided Jet Ski tours, despite knowing or having reason to know that such measures were necessary to ensure the safety of participants, including Plaintiff.

**NATURE OF INJURY:**

On **September 17, 2024**, he presented to Jersey City Medical Center with comminuted fractures of the left hemipelvis associated with a large left bladder and pelvic organs by the hematoma. Also, a comminuted markedly displaced fracture involving the extending into the left superior pubic ramus. There is an additional angulated fracture through the left inferior pubic ramus. Due to the crash, on September 20, 2024; he had to have an **L Acetabulum ORIF** which is a surgical procedure that treats acetabular fractures. On **September 26, 2024**, he was discharged from Jersey City Medical Center.

Plaintiff is currently treating with JAG PT (179 Cahill Cross Road, West Milford, NJ 07480) and RWJBarnabas Health Ambulatory Care Center (200 South Orange Avenue, Livingston, NJ 07039).

See attached medical records.

Medical Bills: TBP

**CAUSATION/DAMAGES**:

As a direct and proximate result of your insureds negligence, **Saed Khaled Ahmed Almomani** was injured in multiple parts of her body, experienced pain and suffering, incurred medical expenses for the treatment of bodily injuries, suffered physical disability, mental anguish, loss of capacity for the enjoyment of life, loss of earnings, and loss of ability to earn money.

Plaintiff's injuries are permanent; within a reasonable degree of medical probability, and she will continue to suffer these losses in the future. Her life has significantly been altered because of this crash.

**LIFE EXPECTANCY:**

At the time of the accident, a 23-year-old male, according to the Actuarial Life Table 2021 (2024 TR), has a life expectancy of another 51.64 years. If a jury were to award Mr. Almomani past & future pain and suffering at the New Jersey Minimum Wage ($15.13/hr) then he would be entitled to $ 6,844,303.63.

**NON-ECONOMIC DAMAGES**:

Plaintiff's life was abruptly interrupted by the negligence of Jersey Jet Ski Inc. He had to seek medical treatment to mitigate his injuries. Plaintiff has sustained permanent injuries as a direct result of this crash. Therefore, he is pursuing both economic and non-economic damages.

In the event this claim does not resolve in accordance with the terms and conditions of this demand, Plaintiff will present a customary per diem argument to the jury for non-economic damages.

The non-economic damages of this case far exceed the available policy limits. Should you not accept our good faith demand to resolve this matter, we will ask a jury to award the full and fair value of the non-economic damages that our client has suffered in the past and will suffer in the future. Please advise your insured of the personal consequences to them should our demand not be accepted.

**OFFER TO SETTLE: $500,000.00 POLICY LIMITS**

This claim can be settled for the liability limits. We provided you will all of the necessary information to adequately and diligently investigate the circumstances surrounding this claim, assess both liability and injury, based on such knowledge, you should recognize the danger of a substantial excess verdict being rendered against your insured. See *Rova Farms Resort, Inc. v. Investors Ins. Co. of America,* 323 A.2d 495 (1974).

**This offer of settlement will remain open until Thursday, December 19, 2024.**

By tendering the available policy limits at this time, we can spare all parties additional legal fees, costs, and delay.

**The Settlement Offer is conditioned upon the following terms:**

- ➢ **Settlement draft made payable to the Morgan & Morgan Philadelphia PLLC Trust Account f/b/o Saed Khaled Ahmed Almomani**, **Tax ID 47-3314032, sent to my direct attention and received in our office, located at 30 Montgomery Street, Suite 410, Jersey City, New Jersey 07302, and in my possession, no later than Thursday, December 19, 2024, at 5pm Eastern Standard Time.**

- ➢ **An agreement between our office and your company regarding the language of a standard release, if necessary**

**If these conditions are not timely met, we will withdraw our offer to settle and file a lawsuit against your insured**.

**While not a condition to settle this claim, we are requesting the following in order to formally release your insured by release or otherwise:**

- **Pursuant to N.J.S.A 39:B-1.1, identity all policies that were issued to the defendant-insured and effective at the time of the alleged incident or occurrence and are related to the litigation. Obtain loss runs for the policies at issue/identify the available limits of insurance and whether they have been eroded and to what extent; provide insured with the name and email address of an adjuster assigned to handle the suit.**

- **An affidavit of no other liability coverage executed by your negligent insured.**

- **An affidavit stating your negligent insured was not in the course & scope of their employment/agency must be executed and in my possession.**

- **An assets affidavit executed by your negligent insured and in my possession.**

Please review the enclosed material and contact me, Andrew Chambarry, Esq. at (201) 209-3444 or Andrew.Chambarry@forthepeople.com to discuss this settlement offer. Do not hesitate to contact us should you have any questions or require any other information to fairly evaluate this claim. We look forward to hearing from you soon in this regard.

Sincerely,

*/s/Andrew Chambarry*
Andrew Chambarry, Esquire
Enclosures

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
IN ADMIRALTY

------------------------------------------------------------------x

IN THE MATTER OF THE COMPLAINT,            Civil Action No.:

    -of-

                                **AFFIDAVIT OF VALUE**

JERSEY JET SKI, INC., AS OWNER OF
TWO BOMBARDIER SEA DOO JET SKIS
FOR EXONERATION OF LIMITATION OF
LIABILITY

------------------------------------------------------------------x

The undersigned authority, being duly sworn, does depose and state as follows:

1. I am David Tantrum, and I am over eighteen (18) years of age.

2. I am a Managing Senior Partner and a marine surveyor, engineer and marine consultant employed with Martin, Ottaway, van Hemmen & Dolan, Inc., located in Tinton Falls, Monmouth County, New Jersey.

3. I have been actively working as a marine surveyor, engineer and marine consultant for more than 30 years, and in such capacity, I am familiar with and have determined the value of vessels such as the Bombardier Sea-Doo GTX 130 Pro jet skis at issue in the within matter.

4. Martin & Ottaway has examined the two Bombardier Sea-Doo GTX 130 Pro jet skis after the alleged incident as stated in the Complaint. I have reviewed certain Sea-Doo identification documentation concerning the vessel and determined that the fair market value of the vessel on the date of the incident on September 17, 2024, was no more than $9,000.00 per unit for a total of $18,000.

1

I hereby certify that this matter is not the subject matter of any other suit presently pending in any other court or in any arbitration proceeding. At this time, I know of no other parties that should be joined in this action.

_____
DAVID TANTRUM

Dated: June 2, 2025

State of New Jersey    :
County of Monmouth :

Signed and sworn to before me on this
2nd day of June 2025 by David Tantrum

_____
Notary Public

```
MARIANNE HERRICK
NOTARY PUBLIC
STATE OF NEW JERSEY
ID # 2209453
MY COMMISSION EXPIRES FEB. 04, 2028
```

2